IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WALKER DIGITAL, LLC, and
WALKER DIGITAL LOTTERY, LLC

    Plaintiffs,

v.                                                                              Civil Action No. 10-1113-RGA

MULTI-STATE LOTTERY ASSOCIATION,

    Defendant.

MEMORANDUM OPINION

Brian E. Farnan, FARNAN LLP, Wilmington, DE; Alan S. Kellman (argued), Jonas R. McDavit (argued), DESMARIS LLP, New York, NY.

    Attorneys for Plaintiffs Walker Digital, LLC and Walker Digital Lottery, LLC.

Richard L. Horwitz, POTTER ANDERSON & CORROON LLP, Wilmington, DE; William L. Roberts (argued), FAEGRE BAKER DANIELS LLP, Minneapolis, MN; Mary V. Sooter (argued), FAEGRE BAKER DANIELS LLP, Boulder, CO.

    Attorneys for Defendant Multi-State Lottery Association.

June 7, 2012

*[signature: Richard G. Andrews]*

**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiffs Walker Digital, LLC and Walker Digital Lottery, LLC (together, "Walker Digital") filed this patent infringement action against Defendant Multi-State Lottery Association ("MUSL") on December 20, 2010. (D.I. 1). Walker Digital alleges that MUSL infringes U.S. Patent No. 7,740,537 ("the '537 Patent"). (D.I. 1). The '537 Patent, entitled "System and Method for Applying Lottery Multipliers," claims "a system and method to allow a lottery player to increase a payout received for winning a lottery game." '537 Patent at col. 3 ll.44-46. Presently before the Court is the matter of claim construction. Briefing on claim construction was completed on April 24, 2012, and the Court held a *Markman* hearing on May 16, 2012. Eight terms are in dispute.

## I. CLAIM CONSTRUCTION

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 388-90 (1996). When construing patent claims, a court considers the literal language of the claim, the patent specification and the prosecution history. *Id.* at 979. Of these sources, the specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*,

2

299 F.3d 1313, 1327 (Fed. Cir. 2002)).

A court may consider extrinsic evidence, including expert and inventor testimony, dictionaries and learned treatises, in order to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Phillips*, 415 F.3d at 1318-19; *see also Markman*, 52 F.3d at 979-80. However, extrinsic evidence is considered less reliable and less useful in claim construction than the patent and its prosecution history. *Phillips*, 415 F.3d at 1318-19 (discussing "flaws" inherent in extrinsic evidence and noting that extrinsic evidence "is unlikely to result in a reliable interpretation of a patent claim scope unless considered in the context of intrinsic evidence").

In addition to these fundamental claim construction principles, a court should also interpret the language in a claim by applying the ordinary and accustomed meaning of the words in the claim. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984). If the patent inventor clearly supplies a different meaning, however, then the claim should be interpreted according to the meaning supplied by the inventor. *Markman*, 52 F.3d at 980. If possible, claims should be construed to uphold validity. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

### A. Claim Terms with Agreed-Upon Claim Constructions

The parties agreed upon the constructions of two terms used in the '537 Patent, and the Court accepts them as detailed below for purposes of this litigation.

| Claim Term or Phrase: | "play indicia" |
| --- | --- |
| Agreed-Upon Construction: | "a character, number, symbol, or message on either a drawing-type lottery or an instant-type lottery ticket; synonymous with 'lottery number'" |

3

| Claim Term or Phrase: | "set of play indicia" |
|---|---|
| Agreed-Upon Construction: | "sufficient play indicia to allow a lottery player to participate in at least a single play of a particular type of lottery game" |

### B. Claims in Dispute

#### 1. "multiplier"

| Walker Digital's Proposed Construction: | "multiplication operator (i.e. "x") and a fractional number (e.g., "1/4", "1/2", "3/4", "0.9"), an integer (e.g., "1", "2", "-3", "0") or a mixed number (e.g., "1 1/4", "4.666", "1 1/2", "2 3/4") that may be obtained (e.g. purchased or won) by a lottery player and applied to (e.g. multiplied by) the value of a winning lottery ticket" |
|---|---|
| MUSL's Proposed Construction: | "a multiplication operator (i.e. '×') and a fractional number (e.g., '1/4', '1/2', '3/4', '0.9'), an integer (e.g., '1', '2', '-3', '0'), or a mixed number (e.g., '1 ¼', '4.666', '1 ½', '2 ¾')" |
| Court's Construction: | "multiplication operator (i.e. "x") and a fractional number (e.g., "1/4", "1/2", "3/4", "0.9"), an integer (e.g., "1", "2", "-3", "0") or a mixed number (e.g., "1 1/4", "4.666", "1 1/2", "2 3/4") that may be obtained (e.g. purchased or won) by a lottery player and applied to (e.g. multiplied by) the value of a winning lottery ticket" |

The term "multiplier" appears in asserted independent claims 1 and 9 of the '537 Patent. In each claim, the claimed device ("terminal" in claim 1, "apparatus" in claim 9) is programmed to "receive a request . . . to purchase eligibility for a multiplier." '537 Patent at col. 32 ll.57-59; *id.* at col. 34 ll.23-24.

The Court construes the term "multiplier" to mean "multiplication operator (i.e. "x") and a fractional number (e.g., "1/4", "1/2", "3/4", "0.9"), an integer (e.g., "1", "2", "-3", "0") or a

4

mixed number (e.g., "1 1/4", "4.666", "1 1/2", "2 3/4") that may be obtained (e.g. purchased or won) by a lottery player and applied to (e.g. multiplied by) the value of a winning lottery ticket," which is the definition set forth in the patent. '537 Patent at col. 6 ll.9-15. *See Markman*, 52 F.3d at 980.

### 2. "is applied to"

| Walker Digital's Proposed Construction: | "altering the value based upon the multiplier size and a set of rules that can be defined by a lottery game provider for a particular multiplier or lottery." |
|---|---|
| MUSL's Proposed Construction: | "alters based upon the multiplier size" |
| Court's Construction: | "altering the value based upon the multiplier size and a set of rules that can be defined by a lottery game provider for a particular multiplier or lottery." |

The term "is applied to" appears in asserted claims 1 and 9. Each claim describes the multiplier as "applied to" "a winning set of play indicia." '537 Patent at col. 32 ll.60-61; *id.* at col. 32 ll.64-65; *id.* at col. 34 ll.25-26; *id.* at col. 34 ll.29-30.

The Court construes the term "is applied to" to mean "altering the value based upon the multiplier size and a set of rules that can be defined by a lottery game provider for a particular multiplier or lottery," which is the definition for "apply" set forth in the patent. '537 Patent at col. 9 ll.14-17. *See Markman*, 52 F.3d at 980.[1]

---

[1] MUSL acknowledges that Walker Digital's proposed constructions of "multiplier" and "is applied to" are the definitions set forth in the specification. MUSL, however, argues that the definitions are inconsistent with the way the claims are actually drafted. For example, Claim 1 provides "the multiplier is applied to a winning set of play indicia at a predetermined magnitude if the winning set of play indicia corresponds to a predetermined specific redemption value." MUSL argues that the multiplier is applied to the winning number, not to the value of the winning number. MUSL's construction is obviously contrary to what the

### 3.   "in which"

| Walker Digital's Proposed Construction: | The clauses in claims 1 and 9 that are introduced by the phrase 'in which' describe the claimed multiplier |
|---|---|
| MUSL's Proposed Construction: | "within said [first] program" |
| Court's Construction: | The clauses in claims 1 and 9 that are introduced by the phrase 'in which' describe the claimed multiplier |

The term "in which" appears in asserted independent claims 1 and 9 to describe the type of multiplier that may be purchased by a lottery player. In each claim, the claimed device is programmed to "receive a request . . . to purchase eligibility for a multiplier." '537 Patent at col. 32 ll.57-59; *id.* at col. 34 ll.23-24. In Claim 1, the claimed device (further described as a "lottery terminal") also is programmed to "transmit an indication of the request by a player to a lottery server." '537 Patent at col. 33 ll.3-4. Thus, the claimed devices assist the lottery player in purchasing the multiplier. The claims do not address any programming that may or may not be included to assist in the payout for a winning ticket.

Claim 1 describes the nature of the multiplier that is being purchased, the description residing in the two "in which" clauses. Specifically, the first "in which" clause describes the predetermined-magnitude multiplier that applies for a "specific" redemption value. And the second "in which" clause describes the random-magnitude multiplier that applies when the redemption value is in a different range. Accordingly, the Court construes the term "in which"

---

inventors intended and would make the patent nonsensical. Perhaps the claim would have been better drafted had it said, "the multiplier is applied to the predetermined specific redemption value at a predetermined magnitude when the predetermined specific redemption value corresponds to a winning set of play indicia." The actual language used is subject to being construed as such, clearly was intended to be construed as such, and thus I will so construe it.

6

to mean that "the clauses in claims 1 and 9 that are introduced by the phrase 'in which' describe the claimed multiplier."

MUSL makes three main arguments against Walker Digital's construction. First, MUSL claims that "in which" must refer to some antecedent noun, and that the only choices are "program" and "multiplier," and that "multiplier" makes no sense. I think the antecedent noun is "request" and that, so read, the use of "in which" makes sense. Second, MUSL claims that the prosecution history shows that Walker Digital amended its claims to recite a list of functions including to "receive" and "transmit." MUSL's argument would have more force if the "in which the muliplier is applied" language instead read "apply the multiplier." That the language does not parallel the other functional language suggests that it should be construed differently. Third, MUSL argues that Walker Digital's construction renders the claims invalid because they are obvious and indefinite. MUSL will have an opportunity to file motions in support of these arguments. In the absence of full briefing on these issues, I cannot judge the merits of these arguments.

### 4. "lottery terminal"

| Walker Digital's Proposed Construction: | No construction necessary |
|---|---|
| MUSL's Proposed Construction: | "a computer that includes at least a [first] processor and a [first] storage device storing a first program." |
| Court's Construction: | No construction necessary |

### "lottery server"

| Walker Digital's Proposed Construction: | No construction necessary |
|---|---|

| | |
|---|---|
| **MUSL's Proposed Construction:** | "a computer that includes at least a second processor and a second storage device storing a second program." |
| **Court's Construction:** | No construction necessary |

No construction of the terms "lottery terminal" and "lottery server" is necessary because anyone reading the claims would understand that a "lottery terminal" and "lottery server" are separate devices, each having its own processor, storage device and program.

5.     "redemption value"

| | |
|---|---|
| **Walker Digital's Proposed Construction:** | "any type of prize that can be awarded to a lottery player." |
| **MUSL's Proposed Construction:** | "any type of prize (monetary or otherwise) that can be awarded to a lottery player." |
| **Court's Construction:** | "any type of prize that can be awarded to a lottery player." |

The Court construes the term "redemption value" to mean "any type of prize that can be awarded to a lottery player," which is the definition set forth in the patent. '537 Patent at col. 6 ll.20-23. *See Markman*, 52 F.3d at 980. MUSL's proposed parenthetical adds nothing.

6.     "determine a price" [Claims 7 and 9]

| | |
|---|---|
| **Walker Digital's Proposed Construction:** | No construction necessary. |
| **MUSL's Proposed Construction:** | "calculate a price" |
| **Court's Construction:** | "calculate a price" |

The Court construes the term "determine a price" to mean "calculate a price." The specification makes clear that "determine" means "calculate." Indeed, a substantial portion of the specification teaches how to calculate the multiplier. '537 Patent at cols. 11-14. The

8

inventors also use the words "determine" and "calculate" interchangeably and synonymously. For example, the specification states"[t]he purchase price of the '2x' multiplier is calculated to be '$1.00'" ('537 Patent at col. 11 ll.27-28); whereas, in a parallel example, the specification states that "[t]he price of the '4x' multiplier was determined to be '$1.50'." *Id.* at col. 15 ll.5-6.

In addition, the only example in the patent where the purchase price for a multiplier is not calculated is mentioned in column 27, describing a scratch-off (instant-type) multiplier ticket. '537 Patent at col. 27 ll.19-35. However, in that example, the specification explicitly states that the price is not "determined" but rather that the step is skipped.

### 7.   "store an indication of a price" [Claims 7 and 9]

| **Walker Digital's Proposed Construction:** | No construction necessary. |
|---|---|
| **MUSL's Proposed Construction:** | "store an indication of the price calculated by the processor" |
| **Court's Construction:** | "store an indication of the price calculated by the processor" |

The term "store an indication of price" appears in Claims 7 and 9 of the '537 Patent. In each claim, it follows an element in which the processor determines a price. The Court construes the term "store an indication of a price" as "store an indication of the price calculated by the processor." Because "price" is preceded by the definite article "the," and not the indefinite article "a," the stored price is the price determined by the processor, not some other price. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) (the definite article "the" indicates that the term takes antecedent basis from the previous use of the same word).